Good morning, your honors. May it please the court. My name is Robert Hill. I am the attorney for the appellant, Howard Markowitz. Mr. Markowitz is present here in the courtroom this morning. I'd like to reserve three minutes for rebuttal, if I may. Thank you, your honors. The issue before the court is an interesting one, and it is one that is subject to a very clear circuit split amongst other courts that have decided it. Both parties have cited the cases clearly showing that different courts have reached polar opposite conclusions when faced with the same basic fact pattern. Unfortunately, the district court here adopted the rationale from the Fifth Circuit in the Wardfield v. Byron case. In doing so, the district court imposed strict liability on Mr. Markowitz, imposing a judgment of nearly $750,000 against him for disgorgement of wages he earned in good faith from NASI, the company that was ultimately determined to be, without Mr. Markowitz's knowledge, a Ponzi scheme. We're here to now ask the court to reverse the district court's decision, granting summary judgment, and in doing so adopt the competing rationale that is set forth by the Eleventh Circuit in the Financial Federated case, and has been adopted by the majority of other courts, lower courts, that have been faced with this fact pattern. There are three primary reasons that we believe the district court's decision was erroneous and why the Eleventh Circuit rationale providing for a case-by-case analysis of whether reasonably equivalent value was provided by a transferee to the debtor is the more appropriate analysis. Well, let me just ask a question about that Eleventh Circuit opinion. The facts are materially different from the facts in this case. The Seventh Circuit did not analyze whether the services provided furthered the scheme's liabilities and insolvency, whereas the Fifth Circuit reasoning was much more analogous to the facts of our case. The facts of Financial Federated were a little bit different because the defendant there, Ms. Orlik, was an office manager. She was providing managerial day-to-day duties for the company, where here the evidence is undisputed. Mr. Markowitz provided solely referrals. He was not an employee of the company. But I do think the Financial Federated case is instructive when looking at those facts. The defendant there was Ms. Orlik. She was the daughter of the Ponzi scheme's operator. The opinion made a note that she had a very limited educational and professional background, yet she received over $1.1 million in quote-unquote salary for office managerial duties. The Eleventh Circuit seemed pretty skeptical in their opinion about whether she actually earned all that money and whether she provided services reasonably equivalent in value to $1.1 million. Nevertheless, the Eleventh Circuit still remanded the matter to allow Ms. Orlik the opportunity to at least put on that defense because the lower court had ruled she could not put on, she could not assert the reasonably equivalent value defense because the money was not enough. The money came from the Ponzi scheme in general. And again, the Eleventh Circuit concluded, you're still entitled to that defense. We don't know if you're going to be able to ultimately prove it at the lower court level, but you need to have that opportunity. And here Mr. Markowitz was denied that opportunity to show that the referrals he provided, the services he provided to the company, were reasonably equivalent in value to the money he received. So let me ask you, were we to agree with you and remand, what showing would you make upon remand? We would have to show the extent of the referrals that were provided to Mr. Markowitz, the money he received, and whether that was reasonable under the circumstances. I think the cases have held that reasonably equivalent value is a factual determination. But what circumstances are here that would show that there was reasonably equivalent value provided? As far as what's before the court now, we have the undisputed set of, excuse me, the stipulated set of undisputed facts that myself and the receiver's counsel prepared in connection with their motion for summary judgment, which confirmed that Mr. Markowitz did provide referrals to the company and he was paid in exchange for those referrals. We have Mr. Markowitz's declaration stating that he had devoted, he had quit his prior job and in fact had moved to Florida so he could devote his full time to generating referrals and thereby generating income for himself from NASI. We do not have the number of referrals. That information is not in the record before it. That was really, I'm sorry Judge Pratt if you didn't mean to. No, I didn't say a word. And that was really because at the lower court the focus was on are referral fees per se subject to avoidance or are they not? And the receiver took the position they were. We argued that they were not. You have to be able to allow the reasonably equivalent value. We believe you satisfied the standard to get past that motion for summary judgment. But would you also have to demonstrate good faith? Of course. And so how would you demonstrate that? Again, Mr. Markowitz's declaration confirms that he did not know this was a Ponzi scheme. That is in the record. I believe it's page 22 or 23. That it was only after the fact that he discovered when everyone else did that this was in fact a Ponzi scheme. He's also an investor which is also in the record. He was an investor in NASI. He maintains he actually lost money in this investment and he was still making investments into 2014 just months before the Ponzi scheme ultimately imploded. Mr. Hill, here's my understanding of the reason that Mr. Markowitz doesn't get any money back. Is that by the nature of the Ponzi scheme, when you get a new investor, you're just creating a bigger scam. And therefore, sending more investors and more dollars into the scam creates more havoc. So why should you, you know, get paid for that? Why should you get your money back even though you're totally innocent? You are creating more havoc. Because that is certainly the analysis of this circuit. And the reason that it should not apply here is it's depriving Mr. Markowitz of the affirmative defense of reasonably equivalent value and good faith that is provided for every other defendant in a fraudulent transfer case. The California legislature has set that out as a affirmative defense in 3439.08. The legislature doesn't provide that there's an exception in there. If the transferee was unbeknownst to them doing business with the Ponzi scheme, certainly the legislature could carve out an exception for that if the California legislature wants to do so. I'd respectfully assume it would be improper for this court to do so, just like I think it was improper for the Fifth Circuit to do so as well. And again, I'll note that the majority of the cases that have addressed this issue have ruled that the more appropriate, reasonable way to approach these is look at the quid pro quo transactions. You have to do it on a case-by-case analysis and not the effect that the services had on the overall enterprise. To create some sort of new rule for Ponzi schemes in this circuit I think would be inappropriate and would step on the legislature's toes. I'll note that there are courts within this circuit, and particularly the Southern District California Bankruptcy Court and the Commercial Money Center, that have ruled that pursuant to California's Fraudulent Transfer Act, you have to look at the specific transaction and that the language of the statute itself commands such a result. And the exact same result was reached by the Illinois District Bankruptcy Court in the first Commercial Management Group case, Seidner brief. Their statute was identical to California's. Connecticut District Court made the same decision in the Carozella-Richardson case based on the same statute. So there's plenty of authority that has determined that the more appropriate and equitable way to approach these cases is to allow the defendant to assert the same defense as everyone else. Certainly if they can't, if they can't prove good faith, or they can't prove reasonable equivalent value, the money will be subject to disgorgement. But here Mr. Markowitz was precluded from making that argument, that determination. The final point, and this is obviously, it was cited in our brief, it's been raised by other cases, is to create an exception for Ponzi schemes and services provided to Ponzi schemes creates a slippery slope. Is the court going to determine that every business or person who does, happens to do business with a company that turns out to be a Ponzi scheme has to return whatever wages they earned? The Universal Clearinghouse case in the Utah District Court said, is that going to apply to a landlord where NASI leased their office space from? Would presumably, by leasing space to the Ponzi scheme, they allow the Ponzi scheme to continue to operate? Should the landlord have to disgorge the rent that it received about the utilities and Internet provider? The reason I find your slippery slope argument, I'm persuaded, is that there are material differences, as the Fifth Circuit pointed out, between an ordinary vendor, a landlord, utility company, or shipping service, and a third-party agent paid to recruit new investors to a Ponzi scheme, like Markowitz. Though ordinary vendor services technically allow the scheme to continue, the connection between those services and the increased creditor liability is indirect and attenuated. For instance, while a vendor like FedEx may assist a Ponzi scheme through its shipping services, those services do not inherently increase the scheme's liabilities. As Judge Pratt pointed out, every new person you bring in just increases the liabilities. I understand that distinction, Your Honor, but the affirmative defense available to defendants in these types of cases is good faith and reasonably equivalent value. So it's not an issue about whether it was an indirect transfer or an indirect effect on it or a direct effect. That's not what the statute requires. The statute provides that every defendant is entitled to assert this defense, and Mr. Markowitz was precluded from doing so. I understand we all want to stop and prevent Ponzi schemes, and I understand that the receiver's goals here are noble. That's what they're trying to do, is marshal assets to give to the victims of the Ponzi scheme. But the receiver's actions have to be checked. Perhaps this is a bad analogy, but the receiver can't go out and rob a bank and just take that money and say, well, I want to give that to these poor, losing investors. They have to have a legal basis for their actions. And here we don't believe that they did because they didn't allow Mr. Markowitz that opportunity to present his defense that is available, again, to every other defendant who's in a similar circumstance under 3439.04. And if I may, if there's no more questions, I'll reserve my remaining time. Thank you. Good morning. May it please the Court. Ted Fates on behalf of William Hoffman, the court-appointed receiver. I'd like to just start by taking a step back for a second and putting this case into context. This case arises from a Ponzi scheme in which over 1,000 investors, primarily in the Los Angeles area, but also throughout the rest of the country, lost collectively over $100 million in a scheme perpetuated over many years. Investors were guaranteed, promised 20 percent return on their money to invest in these ATM sale leaseback contracts. And over many years, many investors made substantial profits from those returns that they were paid. Other investors lost hundreds of thousands of dollars, maybe millions of dollars individually and collectively over $100 million. Mr. Markowitz invested his own money in the scheme and therefore was receiving these guaranteed 20 percent returns on his money. And he saw another opportunity, and that was to... Was he also a victim of the scheme? There were questions as to whether he had a gain or a loss on his personal investments into the scheme. The receiver did not pursue summary judgment of his alleged profit. They pursued summary judgment only as to the referral fees. So there's a question as to whether he was a net winner or a net loser from the scheme. But he did recruit his family members and friends to come to the scheme, to invest in the scheme. And by doing so, was paid approximately $750,000 and admits that he provided no other services or goods or value of any kind to NACI or its creditors. And obviously as part of bringing these new investors to the scheme, he expanded the number of people, the number of victims affected by this, the losses suffered by all of them collectively, including the $750,000 of other people's money that was paid to him for these referrals. Mr. Fates, was the resistance to the summary judgment record, I didn't know? Was that in essence the resistance to the summary judgment motion that you filed, I didn't know? Is that what Mr. Markowitz's papers said? Effectively, yes. He didn't know that this was a Ponzi scheme. And to be fair, the receiver has not contested that. He invested his own money. We have not alleged that his actions were in bad faith. However, he did obtain an enormous amount of money, $750,000 at the expense of the losing investors in this Ponzi scheme who were now trying to recover the funds and distribute, provide a recovery to those investors. Mr. Markowitz claims that he was denied the right to present the defense of reasonably equivalent value. That is not the case. This was a motion for summary judgment. Discovery had been conducted. Discovery had closed. He had every opportunity to gather evidence of whatever value he alleges he provided and to present that in opposition to the receiver's motion for summary judgment. But what types of evidence would show value in this situation? Well, we believe that there can be no true evidence of value in this context. We believe that the Fifth Circuit correctly decided the issue and that as a matter of law, bringing new victims to a Ponzi scheme cannot provide value. So even if you're acting in good faith, investing your own money, and you don't believe it's a Ponzi scheme? If you expand the scheme by bringing new investors in and receive a referral fee and therefore there is a diminution to the estate as a result of that transaction, if you look at it as a transaction-by-transaction basis, what happened is you bring a new investor in. That person puts in their money. Let's say they invest $20,000. Because this is a Ponzi scheme, automatically you've got a debt to that person of at least $20,000. And then you've paid a referral fee on top of it to the agent, in this case Mr. Markowitz. Let's say he's paid $5,000. So $20,000 has come in. You've got a corresponding debt to that investor, and now you've paid $5,000 on top of it. You've diminished the estate by at least $5,000. And you do that over and over and over, and you get a very large... You're saying good faith has nothing to do with the analysis. In this specific situation, I think it's frankly irrelevant whether you act in good faith or not. So can we hold as a matter of law that referral services to a Ponzi scheme provide no value to the scheme and its investors' creditors? Yes, absolutely. And that's what the Fifth Circuit held in the Warfield case and what other courts have held as well. However, even if the court were inclined to follow the Eleventh Circuit, we believe in this case the proper result is still to affirm. Because Mr. Markowitz did not present any evidence at the district court level of any value that he provided in exchange for the $750,000, and certainly not reasonably equivalent value to that sum of money. The only evidence he put forth was a declaration stating that he referred friends and family members to the scheme. Without any number or amount that was invested, or what he was paid, what percentage... I mean, literally there was no evidence as to what the terms were of those transactions. And so there was no basis for Judge Otero at the district court to find that there was a genuine issue of fact as to that issue. And so the court properly held that as a matter of law, on the record before it, there was no reasonably equivalent value. I'd also like to address a couple of the cases cited by counsel. The In Re Commercial Money case, which is the bankruptcy court for the Southern District of California. And that case is somewhat notable because it's the only court, I believe, in the Ninth Circuit that has looked at this specific issue under the California Uniform Voidable Transactions Act. And that case is distinguishable because the defendant specifically put on evidence as to the standard commissions in the industry that it was in and what it was paid and how the payments it received were consistent with industry standards. It was a third-party surety that had provided surety bonds in connection with an investment scheme. And so the court noted that, that it had submitted evidence of those commissions being standard with the industry. Finally, the slippery slope argument, as Your Honor has noted, is not compelling in that there's a very clear distinction between someone who provides a referral and therefore directly expands the scheme, exacerbates the losses suffered by the investors, and a third-party utility provider or landlord or vendor who is simply providing a standard commercial transaction in which services are exchanged. There's market rate, obviously. Anybody can do that out in the industry, I mean, out in the marketplace. So there's a clear distinction between the sort of attenuated kind of perpetuation of the scheme that these sort of general vendors provide and the direct causal connection between referring a new victim to the scheme and the loss that results from that transaction and the referral fee paid. Are there no further questions? I don't think so. Thank you. Thank you, Your Honor. To address a couple of the points that counsel made, as far as the proof presented at the lower court level, as I indicated before, Mr. Markowitz's declaration, which is in the record at ER 22, provides that he did refer friends and family and that the referrals became such a big part of his lifestyle and his income that he quit his other employment and focused full-time on that. We do not get into the issue of how many referrals he provided, what he paid, because this was on the receiver's motion for summary judgment. It was our position that that evidence was enough to present a tribal issue of fact and allow us to go forward. As far as the Warfield case and, of course, counsel's argument is that instead of looking at the individual transaction quid pro quo, you look at the net effect that those services had on the, excuse me, the bankrupt enterprise as a whole here, the Ponzi scheme. That is not the law, particularly in the Ninth Circuit. I'll refer to the N. Ray Roosevelt case, which is from the Bankruptcy Appellate Court for the Ninth Circuit, cited in our reply brief at page 8, and it provides it is unwarranted to impose on a good-faith transferee the measure of the effect of the transfer on other creditors of the debtor. And that just goes along with Financial Federated, the Universal Clearinghouse, the District of Utah, all the cases cited in our brief, which, by the way, is a lot more than what the receiver is able to cite to for their position with regard to Ponzi schemes. You have to look at the individual transaction. Judge Wardlaw, you're asking about the good faith. Is that relevant? It absolutely is. The affirmative defense set forth in the statute provides that a defendant is entitled to that good-faith, reasonably equivalent value defense. The argument that it doesn't apply in Ponzi schemes is contrary to the statute itself and contrary to the law. The question really is can there be any value. Really is what the Fifth Circuit said, is that there's no value when it's a Ponzi scheme. Because, understood, Your Honor, and there, because the court was looking at the effect that the transfer had, the services had on the overall enterprise. And I understand referrals allow, into a Ponzi scheme, allow the Ponzi scheme to continue to operate. And again, that's not a good thing. I understand that. But Mr. Markowitz didn't know it was a Ponzi scheme. He's acting in good faith. And in every other circumstance, fraudulent transfer actions, the defendant is entitled to show that their services they provided are reasonably equivalent to what they received. There is no different rule, or at least there shouldn't be a different rule, with respect to individuals who, without their knowledge, happen to be doing business with a Ponzi scheme. All right. Thank you, counsel.
judges: D.W. Nelson, Wardlaw, Pratt